**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

C.H., a minor, by his parents and next friends,
MYRON WILSON and CHOVONNE HART;
MYRON WILSON, individually; and
CHOVONNE HART, individually,

Plaintiffs,

v. Case No. ____________

MILWAUKEE PUBLIC SCHOOLS;
SECURITY GUARD "JOHNSON";
TONISHEA BEY;
JOHN and JANE DOES 1–5; and
*ABC INSURANCE COMPANY, a fictitious entity,*

Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

NOW COME the Plaintiffs, C.H., a minor, by his parents and next friends, Myron Wilson and Chovonne Hart; Myron Wilson, individually; and Chovonne Hart, individually, by their attorneys, Seifert, Small & Associates, LLC, by Attorney Scott A. Small, and as and for their Complaint against the Defendants, allege and show to the Court as follows:

## NATURE OF THE ACTION

1. This is a civil rights action under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution, together with related claims under Wisconsin law, arising from the November 12, 2025 attack on C.H., a thirteen-year-old Milwaukee Public Schools student, by a classmate who had threatened the day before to kill him. C.H. reported the death threat to MPS school safety staff, who sent him back to class with the student who had threatened him, took no

protective action, and did not tell his parents. The next day, the student entered the school while suspended, hunted C.H. down, broke into the Principal's office to reach him, and stabbed him in the head, arms, and hands with a shattered glass mug.

## JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), because those claims arise under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

3. This Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III.

4. Venue is proper in the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1391(b)(1) and (2), because the Defendants reside in this District and all of the events and omissions giving rise to the claims occurred in Milwaukee County, Wisconsin. Assignment to the Milwaukee Division is appropriate.

## PARTIES

5. Plaintiff C.H. is a minor who was thirteen (13) years old at the time of the events described herein. At all times material, C.H. resided in the City of Milwaukee and was a student enrolled in the Milwaukee Public Schools. C.H. currently resides with his father in Goodyear, Arizona. Pursuant to Fed. R. Civ. P. 5.2(a)(3), C.H. is identified by his initials.

6. C.H. sues by his parents and next friends, Myron Wilson and Chovonne Hart, pursuant to Fed. R. Civ. P. 17(c)(2).

7. Plaintiff Myron Wilson is an adult who resides in Goodyear, Arizona, and is the father of C.H.

8. Plaintiff Chovonne Hart is an adult who resides in Dacula, Georgia, and is the mother of C.H.

9. Defendant Milwaukee Public Schools ("MPS") is a school district and unit of local government organized and existing under the laws of the State of Wisconsin, governed by its Board of School Directors, with its principal office at 5225 W. Vliet Street, Milwaukee, Wisconsin 53208. MPS is a "person" subject to suit under 42 U.S.C. § 1983.

10. Defendant Security Guard Johnson ("Johnson") is an adult who, at all times material, was employed by MPS as a school safety or security staff member at the School described below. Johnson is sued in her individual capacity and acted under color of state law and within the scope of her employment. Johnson's current address is unknown.

11. Defendant Tonishea Bey ("Bey") is an adult who, at all times material, was employed by MPS as a school safety or security staff member at the School. Bey is sued in her individual capacity and acted under color of state law and within the scope of her employment.

12. Defendants John and Jane Does 1–5 are MPS teachers, administrators, safety staff, and other employees whose identities are presently unknown to Plaintiffs, including those who received or were informed of the threat against C.H., and those responsible for enforcing the Assailant's suspension and controlling access to the School on November 12, 2025. Each is sued in his or her individual capacity and acted under color of state law and within the scope of his or her employment. Plaintiffs will amend this Complaint to name these Defendants when their identities are learned through discovery.

13. Pursuant to Wis. Stat. § 895.46, MPS is obligated to pay any judgment for damages and costs entered against Johnson, Bey, and Does 1–5 for acts committed within the scope of their employment.

14. Defendant ABC Insurance Company, by fictitious name, is a liability insurer that, at all times material hereto, issued a policy of liability insurance to MPS and/or its employees; and pursuant to the terms of its policy and Wis. Stat. §§ 803.04(2) and 632.24, is directly liable to Plaintiffs for the damages resulting from the incident described herein.

## COMPLIANCE WITH WIS. STAT. § 893.80

15. On February 11, 2026, within one hundred twenty (120) days of the event giving rise to this claim, Plaintiffs served a written Notice of Injury upon MPS, directed to Missy Zombor, President of the Board of School Directors, and Tina Owen Moore, Board Clerk, by personal delivery to MPS's authorized agent at 5225 W. Vliet Street, Milwaukee, Wisconsin, in accordance with Wis. Stat. § 893.80(1d)(a).

16. On March 10, 2026, Plaintiffs served an itemized Notice of Claim, including a statement of the relief sought, upon MPS, directed to the Board President and Board Clerk, by personal delivery to MPS's authorized agent at the same address, in accordance with Wis. Stat. § 893.80(1d)(b).

17. MPS did not allow the claim within one hundred twenty (120) days of its presentation, and the claim is therefore deemed disallowed pursuant to Wis. Stat. § 893.80(1g) after the lapsing of 120 days after service, July 8, 2026. Plaintiff files these claims within 6 months from the denial date and thus this matter is filed in a timely manner under Wis. Stat. § 893.80. Plaintiffs have satisfied all conditions precedent to their state-law claims. Plaintiffs' federal claims under 42 U.S.C. § 1983 are not subject to the requirements of Wis. Stat. § 893.80.

## FACTUAL ALLEGATIONS

### The Death Threat – November 11, 2025

18. During the 2025–2026 school year, C.H. was a student at King International Middle School, a school operated by MPS serving grades six through eight (the "School").

19. Another student at the School, whose identity is presently unknown to Plaintiffs and who is referred to herein as the "Assailant," was in the same grade as C.H. and shared at least one class with him.

20. On November 11, 2025, C.H., the Assailant, and several other boys were discovered by School staff to be in possession of a "Muha" vape device.

21. The Assailant and other students were suspended as a result of the vape device. C.H. was not suspended. Plaintiff Chovonne Hart called the School and confirmed with School staff that C.H. was not suspended and was expected to attend school.

22. Also on November 11, 2025, the Assailant threatened C.H., telling him that he would be killed because the Assailant believed C.H. had "snitched" on him about the vape device. The Assailant further stated that he would beat up any of the boys in the group who said the vape device belonged to him.

23. After being threatened, C.H. walked out of the class he shared with the Assailant to get away from the Assailant and, at approximately 11:30 a.m., reported the death threat to Defendants Johnson and Bey.

24. Johnson and Bey listened to C.H.'s report and then directed C.H. to return to class, placing him back in the presence of the student who had just threatened to kill him.

25. Johnson and Bey did not report the threat to School administration, did not initiate a threat assessment, did not create a safety plan for C.H., did not take any step to separate C.H. from the Assailant or to keep the Assailant away from C.H., and did not notify C.H.'s parents.

26. Upon information and belief, Does 1–5 also learned of the threat on November 11, 2025, and likewise took no action to protect C.H.

27. By returning C.H. to class with the Assailant and treating the matter as closed, Defendants communicated to C.H. that the matter had been handled and that it was safe for him to remain in class and to return to school the following day, and thereby deprived C.H. and his parents of the opportunity to protect him themselves, including by keeping him home.

28. Neither Plaintiff Chovonne Hart nor Plaintiff Myron Wilson was contacted by MPS regarding the threat made against C.H. until after the attack described below had occurred.

**The Attack – November 12, 2025**

29. On November 12, 2025, the Assailant came to the School while he was under suspension and before his approved reinstatement date.

30. Upon information and belief, MPS did not prevent the Assailant from entering the School, did not alert staff that a suspended student who had threatened another student's life was barred from the building, and was not aware that the Assailant was present until the Assailant's mother called the School asking where her son was.

31. Upon arrival, the Assailant searched for and found C.H., and immediately began attacking him, cutting C.H.'s lip.

32. School staff separated C.H. from the Assailant and escorted C.H. to the School office. The Assailant followed C.H. to the office, causing the School to be placed into a Secure Hold and later a Lockdown.

33. The Assailant pounded on the office doors, attempting to enter the office and continue attacking C.H. Numerous staff members called the police to get the Assailant under control.

34. After being unable to enter the office, the Assailant moved through the School attempting to take keys from staff members in order to open the office door.

35. After unsuccessfully attempting to obtain keys, the Assailant grew more aggressive and agitated and used a chair to break the window of the back door of the Principal's office.

36. Once inside the Principal's office, the Assailant resumed attacking C.H., causing C.H. to retreat into a bathroom.

37. After being unable to enter the bathroom, the Assailant returned to the Principal's office and retrieved his vape device and a glass mug.

38. The Assailant then used a key to another door to pick the bathroom lock and resumed attacking C.H. with the glass mug.

39. The Assailant smashed the glass mug over C.H.'s head, shattering it, and then used the shattered glass to stab C.H. in the head, arms, and hands.

40. Staff separated the Assailant from C.H., at which point C.H. informed staff that he had been stabbed.

41. By that time, paramedics had arrived at the School. A staff member attempted to go outside to escort them in, but the paramedics declined to enter because police had not yet arrived to secure the Assailant.

42. The School nurse provided first aid to C.H. while School officials held the Assailant in a conference room. The Assailant then attempted to run out of the conference room to attack C.H. again, but was prevented from doing so.

43. Shortly thereafter, police arrived at the School, secured the Assailant, and allowed paramedics to provide medical care to C.H.

44. After the attack, the Principal told Plaintiff Chovonne Hart that the Assailant had threatened to kill C.H. because the Assailant believed C.H. had "snitched" on him.

**MPS Policies, Customs, and Training**

45. MPS has adopted written policies governing student safety and staff conduct, including but not limited to Administrative Policy 6.07, Employee Rules of Conduct (2)(h), (m); Administrative Policy 4.03(1)(a), (c); Administrative Policy 6.03(2)(c), (d); Administrative Policy 1.03, Parent Empowerment; and Administrative Policy 8.23(3), which required MPS staff to report and respond to threats of violence against students, to notify parents, and to enforce student suspensions.

46. Upon information and belief, notwithstanding these written policies, MPS maintained a widespread custom and practice of failing to report, investigate, or act upon student reports of threats of violence; failing to notify parents of threats made against their children; and failing to enforce suspensions or control access to its school buildings by suspended students.

47. Upon information and belief, MPS failed to train and supervise its school safety staff, including Johnson and Bey, on threat reporting, threat assessment, parent notification, and the protection of students who report threats against them.

48. The need for training and for enforcement of threat-response and suspension policies was so obvious, and the failure to provide them so likely to result in violations of students' constitutional rights, that MPS's policymakers were deliberately indifferent to the rights of students such as C.H.

**C.H.'s Injuries and Plaintiffs' Damages**

49. C.H. was transported to Children's Wisconsin for emergency treatment. The laceration to C.H.'s head required cleaning, repair, closure, and follow-up care.

50. On November 12, 2025, C.H. underwent bedside surgical procedures by the hand surgery team, including: (a) repair of the extensor tendon of the left long finger (zone 5); (b) repair of the extensor tendon of the right ring finger (zones 5 and 6); (c) repair of a nail bed laceration of the left thumb; and (d) repair of a laceration to the back of the left hand. C.H. was also diagnosed with an open displaced fracture of the distal phalanx of the left thumb.

51. C.H. was started on the antibiotic Keflex to prevent infection of his hand wounds and was prescribed acetaminophen for pain.

52. On November 20, 2025, C.H. was seen at the Froedtert & the Medical College of Wisconsin Hand Center, where custom orthoses were fabricated for both hands, including relative-motion orthoses for the left long finger and right ring finger, a left thumb tip protector, and bilateral wrist orthoses, all to be worn full-time. C.H. was restricted from lifting more than five pounds with either hand and was advised that it would take approximately three months for a new thumbnail to grow. The sutures in C.H.'s head were removed the same day.

53. C.H. continued his treatment with OrthoArizona. On December 24, 2025, approximately six weeks after the attack, C.H. continued to experience numbness, weakness, loss of grip strength, and pain when loading his thumb. On examination he had an extension lag at the PIP joint of the left middle finger and stiffness in the fingers of his right hand. He was prescribed occupational therapy two to three times per week for six weeks.

54. C.H. attended occupational therapy at OrthoArizona on January 9, January 12, and January 16, 2026, and his treatment is ongoing.

55. As a result of the attack, C.H. has suffered physical injuries, scarring, pain, suffering, fear, emotional distress, and loss of enjoyment of life, some of which may be permanent in nature.

56. The medical expenses incurred for C.H.'s care to date include, but are not limited to, $1,050.00 in charges from OrthoArizona for the period December 24, 2025 through January 12, 2026, in addition to the charges for C.H.'s emergency, surgical, and hand-therapy care in Wisconsin. C.H.'s medical expenses are continuing.

57. As a result of C.H.'s injuries, Plaintiff Myron Wilson traveled from Goodyear, Arizona to Milwaukee to care for C.H., took unpaid family leave from his employment from November 13, 2025 through November 28, 2025, and lost wages of approximately $2,274.74. Plaintiff Myron Wilson also incurred travel expenses, including fuel, food, and vehicle rental, of approximately $1,451.13, as well as $332.09 in clothing expenses.

## FIRST CLAIM FOR RELIEF

### 42 U.S.C. § 1983 – Fourteenth Amendment Substantive Due Process (State-Created Danger) – Against Johnson, Bey, and Does 1–5

58. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

59. The Due Process Clause of the Fourteenth Amendment protects C.H.'s right to bodily integrity and to be free from dangers created or increased by state actors.

60. Johnson, Bey, and Does 1–5, acting under color of state law, affirmatively created or increased the danger to C.H. by, among other things: directing C.H. to return to class with the Assailant immediately after C.H. reported that the Assailant had threatened to kill him; treating the death threat as resolved, thereby causing C.H. and his parents to forgo protective measures they otherwise would have taken; and withholding the threat from C.H.'s parents and from School administration.

61. These Defendants knew that the Assailant had threatened to kill C.H., knew the reason for the threat, and knew that C.H. was a thirteen-year-old child who would be required to

attend school with the Assailant. They acted with deliberate indifference to a known and substantial risk of serious harm to C.H.

62. Defendants' conduct in sending a child back into the presence of a classmate who had just threatened to kill him, and then doing nothing, shocks the conscience.

63. Defendants' affirmative acts and failure to protect C.H. from the danger they created or increased were a proximate cause of the November 12, 2025 attack and of C.H.'s injuries.

64. The right of a child not to be placed by state actors into a known danger of serious violence was clearly established at the time of Defendants' conduct.

65. Defendants acted willfully, maliciously, or in reckless disregard of C.H.'s constitutional rights, entitling Plaintiffs to punitive damages against these Defendants.

66. As a direct and proximate result of these Defendants' conduct, C.H. suffered the injuries and damages described above.

## SECOND CLAIM FOR RELIEF

### 42 U.S.C. § 1983 – Municipal Liability – Against MPS

67. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

68. The violation of C.H.'s Fourteenth Amendment rights described above was caused by MPS's widespread customs and practices, which were so permanent and well settled as to constitute MPS policy, of failing to report, investigate, or act on student reports of threats of violence; failing to notify parents of threats against their children; and failing to enforce suspensions and control access to its buildings.

69. The violation of C.H.'s rights was further caused by MPS's failure to train and supervise its school safety staff and other employees on threat reporting, threat assessment, parent notification, and the protection of students who report threats, in circumstances where the need for such training was obvious and MPS had prior notice that its safety staff were failing to protect students from student-on-student violence.

70. MPS's policymakers acted with deliberate indifference to the known or obvious consequence that these customs and failures would result in the violation of students' constitutional rights.

71. MPS's customs, practices, and failure to train were the moving force behind the violation of C.H.'s constitutional rights and his resulting injuries and damages.

## THIRD CLAIM FOR RELIEF

**Negligence – Failure to Perform Ministerial Duties (Wisconsin Law) – Against All Defendants**

72. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

73. MPS and its employees owed C.H., a minor student entrusted to their care, a duty to exercise reasonable care for his safety while he was at school.

74. MPS, Johnson, Bey, and Does 1–5 failed to discharge ministerial duties imposed by the MPS policies identified above, including by failing to report and respond to the threat against C.H., failing to notify C.H.'s parents of the threat, and failing to prevent a suspended student from entering the School.

75. MPS and its employees were negligent.

76. As a direct and proximate result of their negligence, C.H. sustained the injuries and damages described above.

## FOURTH CLAIM FOR RELIEF

**Negligence – Known and Compelling Danger (Wisconsin Law) – Against All Defendants**

77. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

78. The Assailant's threat to kill C.H., reported directly to MPS staff and made in retaliation for the very incident for which the Assailant had just been suspended, presented a danger to C.H. that was known to Defendants and so compelling that their duty to act to protect C.H. was absolute, certain, and imperative, leaving no room for the exercise of discretion.

79. Defendants failed to act. They sent C.H. back to class, took no protective measures, did not notify his parents, and did not prevent the Assailant from entering the School the next day, where the Assailant carried out his threat.

80. As a direct and proximate result of Defendants' failure to act in the face of a known and compelling danger, C.H. sustained the injuries and damages described above.

## FIFTH CLAIM FOR RELIEF

**Parents' Claims (Wisconsin Law) – Myron Wilson and Chovonne Hart Against All Defendants**

81. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

82. As a direct and proximate result of Defendants' negligence, Plaintiffs Myron Wilson and Chovonne Hart have incurred and will continue to incur medical and related expenses for the care and treatment of their minor son, and have been deprived of his society and companionship.

83. As a further direct and proximate result of Defendants' negligence, Plaintiff Myron Wilson lost wages and incurred travel and other expenses in caring for C.H. following the attack.

## SIXTH CLAIM FOR RELIEF

**MONELL (Section 1983)**

84. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

85. At the time of the incidents giving rise to this complaint and for a period of time prior to, Defendant MPS had notice that threats had been made against students at the School, and that threats from students failed to be reported by school safety officers.

86. Defendant MPS's policies failed to result in any meaning investigation into the threats reported by C.H. to the school employees, thus a *de facto* policy of failing to conduct such investigations was ratified by the inactions of MPS. MPS is liable for such actions when its official policies lead to officials violating the constitutional rights of students and their families.

87. MPS's customs, policies, practices, procedures, and ratification of the inactions of the safety officers were all inadequate and unreasonable, and were the proximate cause of the plaintiffs' injuries and the cause of constitutional deprivations suffered by the plaintiffs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants, jointly and severally, and award:

A. Compensatory damages to C.H. in an amount to be determined at trial;

B. Compensatory damages to Myron Wilson and Chovonne Hart, including medical expenses, lost wages, travel and other expenses, and loss of society and companionship, in an amount to be determined at trial;

C. Punitive damages against Defendants Johnson, Bey, and Does 1–5 on the First Claim for Relief;

D. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

E. The costs and disbursements of this action, and pre- and post-judgment interest as allowed by law; and

F. Such other and further relief as the Court deems just and equitable.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiffs demand a trial by jury on all issues so triable.

Dated this 16th day of November 2026.

**Signed by:**

*s/ Scott A. Small*
Scott A. Small, State Bar No. 1116789
757 N. Broadway St., Suite 300
Milwaukee, WI 53202
(t) 414-273-9900 Ext. 3
(f) 414-240-8602
scott@seifertsmall.com